Merline WALHOOD

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES.

No. 1:93CV938.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 16, 1995.

John Dudley Rutland, Beaumont, TX, for plaintiff.

Steven M. Mason, Asst. U.S. Atty., for defendant.

### *ORDER*

SCHELL, Chief Judge.

CAME ON FOR CONSIDERATION the above-styled and numbered civil action, the court having heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge at Beaumont, Texas, for proper consideration pursuant to applicable laws and orders of this court; and the court having received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence, it is found that the findings of fact and conclusions of law of the magistrate judge are correct, and such findings are **ADOPTED** as the findings and conclusions of this court. It is therefore

**ORDERED** and **ADJUDGED** that the Secretary's decision is **REVERSED** and this case is **REMANDED** to the defendant Secretary for further proceedings, pursuant to Title 42 U.S.C. § 405(g), sentence 4.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

### I. Introduction

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's application for widow's disability insurance benefits. Plaintiff claims disability due to arthritis. She contests the Secretary's decision by asserting that the Administrative Law Judge ("ALJ") erred in finding her not disabled.

This case has been referred to the undersigned United States magistrate judge for review, hearing if deemed necessary, and submission of a report with recommended findings and conclusions. *See* 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrates. For reasons discussed below, it is the magistrate judge's recommendation that the Secretary's decision be reversed.

### A. Judicial Review

■ The limited role of judicial review is to determine whether the Secretary applied the proper legal standards, and whether the Secretary's decision is supported by substantial evidence. *Lovelace v. Bowen*, 813 F.2d 55, 57 (5th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Marcello v. Bowen*, 803 F.2d 851 (5th Cir.1986) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983)).

■ A determination as to whether there is substantial evidence in the entire record to support the fact findings or decision of the Secretary, as the trier of facts, does not involve reweighing the evidence, or trying the issues de novo, or substituting the judgment of the court for that of the Secretary. *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987); *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). Rather, this court must "scrutinize the record in its entirety to determine whether substantial evi-

dence supports the Secretary's findings." *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir.1983). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ Elements of proof to be weighed in determining whether substantial evidence exists include: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; (4) in the case of a wage earner, the claimant's educational background, age, and work history. *Owens v. Heckler*, 770 F.2d 1276, 1279 (5th Cir.1985) (*citing DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

### B. Eligibility for Widow's Benefits

The Social Security Act ("SSA") provides for payment of widow's insurance benefits to disabled widows and widowers between the ages of fifty and sixty, whose spouses die fully insured. 42 U.S.C. § 402(e) (1976). Historically, a widow had to establish that the physical or mental impairment or impairments possessed are of a level of severity which, under regulations prescribed by the Secretary, is deemed to be sufficient to preclude engagement in *any* gainful activity. 42 U.S.C. § 423(d)(2)(B) (1976) (emphasis added). This standard was more stringent than that applied to the disabled wage earner, who must be precluded from engaging in *substantial* gainful employment. 42 U.S.C. § 423(d)(2)(A) (1976) (emphasis added). *See Dorton v. Heckler*, 789 F.2d 363 (6th Cir. 1986).

■ "In 1990, Congress amended the SSA to provide that as of January 1, 1991, the definition of disability for the purpose of determining spouse's … benefits would conform with that of applications of wage earner disability claims under Title II, Pub.L. 101–508 § 5103." *Wachter v. Shalala*, 856 F.Supp. 140, 143 (W.D.N.Y.1991). Consequently, vocational factors such as age, past work experience, and education must be con-

sidered in a widow's claim. *See* 42 U.S.C.A. § 423(d)(2)(B) West (1994).

■ A widow must show an existing impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404, or one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment. *Reynolds v. Secretary of HHS,* 707 F.2d 927, 928 (6th Cir.1983). The impairment also must meet the twelve-month duration requirement. 20 C.F.R. §§ 404.1577, 404.1578 (1986). Additionally, eligibility for benefits elapses seven years after the insured's death. Plaintiff's husband died on May 26, 1977. Plaintiff's period of eligibility for widow's benefits elapsed on May 31, 1984, seven years after her husband's death. 42 U.S.C. § 404. All medical evidence of arthritis or other disabling conditions are confined to the period between the onset date and May 31, 1984, regardless of plaintiff's present condition.

## C. Exhaustion of Administrative Remedies

### (1) General Requirements

Administrative steps which a social security disability claimant must exhaust before bringing suit in federal district court are summarized by the Fifth Circuit as follows:

The Secretary has established a regulatory system for administrative review, leading up to a final decision that may then be appealed to the district court. The process is begun when an individual files a claim with the SSA for benefits. This claim is either granted or denied, creating an initial determination. *See* 20 C.F.R. §§ 416.1404 to 416.1405. Next, the claimant must file for and receive a request for reconsideration. *See generally* 20 C.F.R. §§ 416.1407 to 416.1422. The Secretary reviews the claim again, and then issues a reconsidered determination. 20 C.F.R. § 416.1420. After obtaining the initial and reconsidered determinations, a dissatisfied claimant may file for an evidentiary hearing before an ALJ. *See generally* 20 C.F.R. §§ 416.1429 to 416.1468. If the claimant still objects to the decision, he or she may appeal the ALJ's determination to the Appeals Council. *See generally* 20 C.F.R. §§ 416.1467 to 416.1483. The decision rendered at the initial, reconsideration, and ALJ stage is binding on the claimant unless further administrative review with the Appeals Council is sought within 60 days. These four steps exhaust the claimant's administrative remedies.

Following this exhaustion of the administrative remedies with a final decision being rendered by the Appeals Council, judicial review may be sought in the district court. 20 C.F.R. §§ 416.1400 and 416.1481. *See also Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 201 (1977) ("Section 205(g) clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.' "). Although a decision rendered on a claim at each stage of the proceedings is final and binding on the parties unless they proceed to the next step in the process, the regulatory scheme provides that a "final decision" allowing judicial appeal is rendered by the Secretary for the purposes of section 205(g) of the Social Security Act when the Appeals Council either reviews or denies review of the ALJ's decision. *See* 20 C.F.R. §§ 416.1405, 416.1421, 416.1455, 416.1481. After such a "final decision," the claimant has 60 days in which to file for judicial review of the decision or else it is binding. 20 C.F.R. § 416.1481.

*Harper v. Bowen,* 813 F.2d 737, 739 (5th Cir.1987), *cert. denied,* 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987).

### (2) Proceedings in this Case

On February 27, 1989, plaintiff filed an application for widow's insurance benefits under Title II of the Social Security Act on her late husband's account. She alleged she had been disabled since 1982 due to arthritis. (Tr. 91–104). A hearing before an ALJ was conducted on November 27, 1989. (Tr. 23). The ALJ issued an opinion on October 11, 1990, denying plaintiff's application for benefits. (Tr. 156–161). On July 29, 1991, the Appeals Council remanded plaintiff's case for a supplemental hearing due to revisions in the standard for evaluating widow's benefits. (Tr. 166–68). *See* Social Security Ruling 91–

3(p) ("residual functional capacity will be used in determining whether a widow is disabled."). A second ALJ held a supplemental hearing on May 21, 1992 (Tr. 70). The second decision was issued on June 26, 1992. (Tr. 8–12). Plaintiff again was denied benefits. The Appeals Council denied review. Consequently, plaintiff's claim for widow's disability benefits is properly before the court.[1]

## II. Factual Background

### A. Medical Evidence

Degenerative arthritis with corresponding muscle spasms was noted in plaintiff prior to the onset date designated in these proceedings. In May of 1979, Dr. Y.R. Basha, M.D., of the Memorial Medical Center, P.C., reported a narrowing of disc space in the spine with hypertrophic spurs[2] and some sclerotic changes. (Tr. 140). Degenerative changes were noted in the dorsal spine. (Tr. 141). Plaintiff was admitted to the Detroit Macomb Hospital, in Detroit, Michigan on October 26, 1979. The final diagnosis was diverticulitis,[3] ulcer disease, arthritis, and non-specific colitis. (Tr. 142).

On June 24, 1982, Dr. Leon Stertz, M.D., noted arthritis in plaintiff's knees, both wrists, and fingers. (Tr. 215). Prior to plaintiff's 1989 administrative hearing, Dr. Richard A. Scott, D.O., of Bi–County Orthopedic Surgeons P.C., in Warren, Michigan, submitted a half-page report in which he recounted having treated plaintiff for arthritis of the thumb joint in 1982. At that time, Dr. Scott stated, there existed limitations on plaintiff's ability to stand and lift. (Tr. 144).

### B. Plaintiff's Subjective Complaints

Confining plaintiff's testimony to those comments relevant to the court's inquiry, that is, before May 31, 1984, plaintiff testified at her second hearing that she had continuous pain since 1982. (Tr. 77). She stated she could not sit, stand, or lay down for long periods of time in 1982. (Tr. 81).

## III. The Secretary's Decision

### A. Sequential Evaluation Process

The Secretary's regulations require a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (1986). *First:* Is the plaintiff currently engaging in substantial gainful activity? If so, a finding of nondisability is required to be made and the inquiry ends. *Second:* Does the plaintiff have a severe impairment or combination of impairments? If not, a finding of nondisability is required and the inquiry ends. *Third:* Does the severe impairment meet or equal those in the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1986)? If so, disability is presumed and benefits are awarded. *Fourth:* Does the impairment prevent the performance of the plaintiff's regular previous employment? If it does, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Secretary. *Chaparro,* 815 F.2d at 1010. *Fifth:* Is there work in the national economy which the plaintiff can perform? If the Secretary shows that the plaintiff can perform alternative employment, the burden then shifts back to the claimant to show he or she cannot perform the alternative labor. *Id.; Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

### B. The Administrative Law Judge's Decision

After considering the evidence of record, Administrative Law Judge N.L. Linebaugh concluded at the third sequential step that plaintiff's impairments did not match the list of impairments presumed severe enough to preclude any gainful employment. This finding mandated the ALJ proceed to the fourth and fifth steps. Plaintiff was found capable of performing medium work activity. The ALJ's findings are summarized as follows:

Step 1: Plaintiff had not engaged in substantial work activity during any relevant time period. (Tr. 11).

Step 2: The medical evidence established claimant had arthritis and stomach prob-

---

1. The parties raise an exhaustion issue with regard to the filing of plaintiff's own claim for benefits, which will be addressed *infra.*

2. Overgrown protrusions.

3. An inflammation of the diverticulum or colon.

lems on or before May 30, 1984. (Tr. 14, Finding 4).

Step 3: Claimant did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, 20 C.F.R. § 404.1526. (Tr. 14, Findings 5, 6).

Step 4: Claimant was incapable of performing her past relevant work. (Tr. 13).

Step 5: Claimant has the residual functional capacity to perform the full range of medium work.[4] (Tr. 14, Finding 10).

The ALJ concluded that jobs existed in significant numbers in the national economy for plaintiff to perform. Pursuant to Rule 202.11 of Appendix 2, the ALJ found plaintiff was not disabled. (Tr. 18–19).

## IV. Discussion

### A. General Rules for Decision

Plaintiff has the burden of establishing disability by a preponderance of the evidence. Once plaintiff establishes a prima facie case by showing an inability to perform relevant previous employment, the burden shifts to the Secretary to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.

### B. Application of the Rules to this Case

Plaintiff disputes the ALJ's decision and advances the following points of error:

(1) There was no administrative disposition of plaintiff's 1982 application for her own benefits.

(2) The ALJ did not consider plaintiff's past work experience and ambiguously considered her age in reaching his decision.

(3) The ALJ used an inappropriate standard in concluding plaintiff could perform medium work activity.

Discussion of the second and third objections is consolidated, as they prove dispositive of this matter.

---

4. Medium work is defined as:
    Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.

**(1) Plaintiff has not exhausted her administrative remedies regarding her own disability benefits.**

■ Plaintiff filed an application for Title II disability insurance benefits on her own account in August of 1982. (Tr. 146). There exists no doubt her application was denied. *See* Tr. 27 (attorney stating at hearing that "the only evidence we have of this [denial] is a copy of ... when she was denied in 1982."); Tr. 152 (claims data display indicating "disallowance"). No appeal was taken. Plaintiff now asks this court to remand this earlier decision for further administrative action. The invitation must be declined because "a decision rendered on a claim at each stage of the proceedings is final and binding on the parties unless they proceed to the next step in the process...." *Harper,* 813 F.2d at 739.

There is no authority to proceed with any disposition of plaintiff's claim in this arena. Plaintiff has not exhausted her administrative remedies with regard to her own account application. Consequently, any claim she may have to her own benefits is not properly before the court.

**(2) The ALJ improperly concluded plaintiff could perform medium level work.**

■ As discussed *supra,* once the ALJ reaches the fifth step of the sequential analysis, he or she must "take into account" vocational factors when assessing the ability to perform gainful employment, that is, age, education, and past work experience in determining whether that claimant can perform work within the national economy. 20 C.F.R. 416.920(f). *See also Orphey v. Secretary of HHS,* 962 F.2d 384 (5th Cir.1992). This applies regardless of whether the claim is for wage earner or widow's benefits.

The ALJ stated that he considered these vocational factors. *See* Tr. 15, Finding 13 ("considering the claimant's residual func-

---

If someone can do medium work, we determine that he or she can also do sedentary and light work.
20 C.F.R. §§ 404.1567, 416.967.

tional capacity, age, education, and work experience ...”). However, closer analysis reveals not only is there a lack of substantial evidence, but there actually is *no* evidence of vocational factor consideration. Therefore, the ALJ's ultimate finding regarding plaintiff's ability to perform medium level work should be reversed.

### a. Age

■ “Age” refers to plaintiff's chronological age. 20 C.F.R. § 404.1563(a). An individual attains a given age on the first moment of the day preceding the anniversary of his birth corresponding to such age. 20 C.F.R. § 404.2(c)(4). The Secretary has decided that in borderline situations, age categories will not be mechanically applied. Although neither the Secretary nor the courts have yet defined what set of circumstances will give rise to a “borderline situation,” the Secretary is “vested with considerable discretion in this application.” *Underwood v. Bowen*, 828 F.2d 1081 (5th Cir.1987). Some guidance in this regard is found in the case authority which indicates that the relevant age is that which the plaintiff has attained at the time of the court's decision, provided he or she remains insured on that date. *Id.; Varley v. Secretary of HHS*, 820 F.2d 777 (6th Cir.1987). It therefore appears that when a plaintiff will remain insured while attaining a vocationally significant age after the date of the Secretary's decision, such circumstance (and possibly others) should be considered “borderline situations.”

A claimant in a borderline situation will have his disability determined according to the standards applicable to the next higher age category. Generally, the higher the age category, the more lenient the standard for proving disability.

The ALJ explicitly stated plaintiff was born on August 9, 1935. However, the ALJ found she was both 56 *and* 54 years old at the time of the hearing. *See* Tr. 13, Finding 11 (“The claimant is 54 years old, which is defined as approaching advancing age (20 C.F.R. § 404.1563)); Tr. 11 (“Claimant ... is now 56 years old.”). A person of fifty-four years is “approaching advancing age,” 20 C.F.R. 404.1567, while a person of fifty-six is

“a person of advanced age.” 20 C.F.R. 404.1563(c). As a result of this different classification, the fifty-four-year-old would have her age subject to less deference than the fifty-six-year-old.

The Secretary argues age is not relevant in this case, but if it were, plaintiff was a “younger individual” at the time she was insured, that is, fifty years of age or younger. Therefore, her age was entitled to less deference. This may be true. However, it is impossible to conclude what method the ALJ employed in considering age. Such an evidentiary chasm should not be bridged in the name of expediency.

### b. Past Work Experience

The record does not contain any evidence of plaintiff's past work experience. This is supported by the ALJ's findings. (Tr. 14, Finding 9, “The claimant's past relevant work experience is unknown.”). Plaintiff testified she had previously worked for an unspecified “park plan.” (Tr. 35). Earning records show substantial gainful employment in 1978 and 1979. However, there is no direct testimony as to what plaintiff did during that time, although after her relevant time for benefits elapsed she attempted to pursue a position as a home care provider and engaged in entrepreneurial activity selling small items. (Tr. 189). She also performed “some work ... for Chrysler Corporation.” Plaintiff's Brief in Support of Summary Judgement, at 5.

“Giving claimant the benefit of the doubt,” Tr. 12, the ALJ concluded a person with documented arthritis at plaintiff's 1984 stage would not be able to lift more than fifty pounds. (Tr. 14, Finding 8). The ALJ proceeded to state that due to the lack of any testimony as to what plaintiff's actual past relevant work was, the ALJ would conclude she could not do her relevant work. However, there were substantial employment opportunities of medium, light, and sedentary work available to her. Plaintiff was not prejudiced by this assumption at the fourth step of the process. However, in light of the role consideration of her past relevant work experience plays in the final step of the ALJ's analysis, “unknown” work experience is in-

sufficient to support a finding that she is capable of medium level work.

### c. *Educational Level*

The ALJ's findings also noted "[t]he claimant has an unknown level of education." (Tr. 14, Finding 12). Education is one factor to consider in determining whether plaintiff is capable of performing medium work. To the extent such evidence is unknown, it would have been impossible for the ALJ to consider it.

Additionally, the transcript of plaintiff's hearing indicates she testified, in response to the ALJ's questioning, that she had only attended school to the seventh grade. (Tr. 74). Consequently, it appears there is evidence in the record that the ALJ failed to consider, which further weakens the court's confidence in the ALJ's ability to make an informed decision.

### V. Conclusion

Despite the best intentions of the Appeals Council, which has already remanded this case once for consideration of the factors this Court finds lacking, the ALJ's findings simply are not supported by the record. No reasonable mind could comfortably conclude the ALJ used the appropriate criteria to assess plaintiff's capacity to perform substantial gainful activity. As a result, this case should be remanded for further proceedings. Such absence of evidence may be attributed to the changing standard in assessing widow's benefits which occurred during the disposition of plaintiff's claims. However, the case should remanded for further proceedings.

### VI. Recommendation

The Secretary's decision should be reversed and this case remanded to the Secretary for further proceedings pursuant to Title 42 U.S.C. § 405(g), sentence 4.

### VII. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained within this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).

SIGNED this 24 day of January, 1995.